**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,   )  |  |
|        )  |  |
|      Plaintiff,    )  |  |
|        )  |  |
|      v.      ) | CIVIL NO. 11-11548-PBS |
|        )  |  |
| JOSEPH J. MELONE,    )  |  |
| both individually and as trustee  )  |  |
| of the AMANDA IRREVOCABLE TRUST,  )  |  |
|        )  |  |
| LISA PELRINE MELONE,    )  |  |
|        )  |  |
| BANK UNITED, and,    )  |  |
|        )  |  |
| JP MORGAN CHASE,    )  |  |
|        )  |  |
|      Defendants.    )  |  |

**MEMORANDUM AND ORDER**

March 26, 2013

Saris, U.S.D.J.

**I. INTRODUCTION**

Plaintiff, United States of America, alleges that Defendant Joseph J. Melone is liable for unpaid income taxes, penalties and interest for the years 1991-99 in the amount of $164,296.60 and civil penalties under 26 U.S.C. § 6702 for the filing of frivolous income tax returns for the years 1991-97 in the amount of $7,450.02. Plaintiff also requests that the associated federal tax liens be enforced against the real property located at 200 Pleasant Street, Pembroke, Massachusetts 02359. Plaintiff moves

1

for summary judgment and Defendant opposes. After hearing and review of the briefs, the motion is **ALLOWED**.

## II. FACTS

**A.   Mr. Melone's Federal Income Tax Liabilities**

Defendant Joseph Melone is a self-employed general contractor who has lived and operated his business out of the real property located at 200 Pleasant Street, Pembroke, Massachusetts ("Pleasant Street Property") since the 1980s. Mr. Melone has a history of difficulty with paying his taxes. After the Internal Revenue Service ("IRS") repeatedly levied his bank accounts, Mr. Melone grew frustrated and declined to file timely federal income tax returns for the years 1991-99. When the IRS contacted him about his failure to file these returns, Mr. Melone responded by filing "zero returns," which are Forms 1040 reporting zero income and zero tax due. At the same time that Mr. Melone filed the zero returns, he sent the IRS what he referred to as "stupid letters" that served as "little rebellious statement(s)" saying that "taxes are voluntary and that kind of thing." JJM Depo at 25:13-23. The IRS received information that Mr. Melone was earning income during this time period because his customers reported the amounts that he had been paid in his contracting business on Forms 1099. Consequently, on November 9, 1998, the IRS made assessments of federal income taxes and interest against Mr. Melone for the years 1991-96 based on third-

party information. On April 9, 2001, the IRS made another assessment against Mr. Melone for 1998.

In the early 2000s, Mr. Melone decided to file Forms 1040 for 1991-99 that accurately reflected his income and tax due. Based on these voluntarily filed and accurate returns, the IRS partially abated the assessments for 1991-96 and 1998, and made original assessments for the years 1997 and 1999. Additionally, due to his ongoing failure to pay his liabilities, the IRS assessed late payment penalties against Mr. Melone for 1991-95 and 1998. The IRS separately assessed civil penalties for the filing of frivolous "zero returns" for the tax years 1991-97, pursuant to 26 U.S.C. § 6702. Mr. Melone has been notified of his tax liabilities and has failed to pay them in full.

After the application of all abatements, payments, and credits, Mr. Melone remains indebted to the United States for income taxes, penalties, and interest for the income tax years 1991-99 in the total amount of $164,296.60 as of November 14, 2012, as well as for the civil penalty assessments for the tax years 1991-97 in the total amount of $7,450.02 as of November 14, 2012, plus additional amounts as may accrue after that date as provided by law.

**B.     Pleasant Street Property and the Amanda Irrevocable Trust**

Mr. Melone purchased the 200 Pleasant Street Property from his parents for approximately $150,000 by deed dated February 1,

1994 and recorded on March 9, 1994. Mr. Melone granted a security interest in the property by mortgage dated March 8, 1994 to Rockland Federal Credit Union in exchange for a $120,000 loan. Mr Melone was the sole applicant on the loan and has been the sole borrower on the loan since 1994.

Mr. Melone established the Amanda Irrevocable Trust ("Trust") by instrument dated April 16, 1999, naming himself as the sole trustee. Mr. Melone granted title to the Pleasant Street Property to himself as trustee of the Trust by quitclaim deed dated April 16, 1999, reserving for himself a life estate. The transfer of title was for no consideration. Mrs. Melone was to become the successor trustee if Mr. Melone became unwilling or unable to serve as trustee. Mr. Melone listed the second potential successor as Janice Coury, his sister. Mr. Melone's three children were named as beneficiaries of the Trust. To date, no other property has been held in the name of the Trust. Mr. Melone has stated that he transferred the property into the name of the Trust because he believed that it would protect the property in the event that he was sued. He claimed to view this as "just like another insurance". JJM Depo at 39:6-24. Mr. Melone noted specifically that the possibility that he might be sued by the IRS had "crossed [his] mind." JJM Depo at 41:24-42:11; 42:19-21. As additional protection, Mr. And Mrs. Melone agreed in 2000 to put the contracting business and its bank account into Mrs.

Melone's name because they believed assets held in Mr. Melone's name would likely be levied by the IRS.

After he created the Trust, Mr. and Mrs. Melone entered into a renewable ten year lease agreement with Mr. Melone as trustee of the Trust. The agreement, dated May 24, 1999, provided that the Melones would rent the Pleasant Street Property for a monthly payment of $1,350. From 2000-2010, Mrs. Melone's personal bank account was used to receive payments from customers of Mr. Melone's business. Until 2005, the "rent" was paid into the Trust bank account from Mrs. Melone's personal account. The "rent" payments paid into the Trust account were roughly equivalent to the mortgage payments that were then paid out of the Trust account. After 2005, the Trust account was no longer active and the mortgage payments were made directly from Mrs. Melone's personal account to the mortgagee without the pretense of "rent" payments. Since April 2011, Mr. Melone has made his mortgage payments directly, through a bank account held in the name of "Joseph J. Melone, Jr., dba JJM General Contracting."

Notably, while it existed, Mr. Melone used the Trust account to write an $800 check dated February 3, 2002 to the IRS to apply toward his federal income tax liability. Mr. Melone also made payments toward his Massachusetts income tax liabilities by writing several checks drawn on the Trust bank account dated February 22, 2003.

Mr. Melone has stated that his use of the Pleasant Street Property has not been restricted by the fact that the title is held in the name of the Trust, except by complicating his efforts to obtain refinancing on the mortgage. Mrs. Melone agrees that during her time living with Mr. Melone, the Trust did not restrict her use of the property. At all times since 1999, Mr. Melone has continued to live on the property and to hold himself out to others as the owner and the property has not been used for any purpose other than as a residence for the Melones and as a place of business for Mr. Melone. The utility bills for the property remain in Mr. Melone's name and are paid from his income. The property insurance bill is also in Mr. Melone's name. It is only the property tax bills that are not mailed to Mr. Melone in his individual capacity; instead, they are sent to Mr. Melone as trustee of the "Amanda Realty Trust", which Mr. Melone claims is in error, because as to his knowledge, the "Amanda Realty Trust" does not exist. Additionally, correspondence related to the mortgage has always been mailed to Mr. Melone in his individual capacity as the mortgage remained in his name and was not transferred into the name of the Trust. In fact, Mr. and Mrs. Melone deducted the mortgage interest and property taxes paid on the property and expenses associated with the business use of the home on their joint federal income tax returns for 2004, 2008, and 2009.

### III. DISCUSSION

I.  **Federal Income Tax Liabilities for 1991-99 and Frivolous Return Penalties for 1991-97**

The taxpayer bears the burden of overcoming the presumption that a tax assessment made by the IRS is correct. <u>Delaney v. C.I.R.</u>, 99 F.3d 20, 23 (1st Cir. 1996) (citing <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933)). In this case, Mr. Melone does not contest that he is liable for federal income tax liabilities for the years 1991-99, nor does he contest the amount. Further, these assessments were based on his own voluntarily filed tax forms. Accordingly, the Court finds that Mr. Melone is liable to the United States for $164,296.60 in federal income tax liabilities, including penalties and interest, for the years 1991-99.

Mr. Melone also does not contest that he is liable for the civil penalties assessed by the IRS for filing "zero returns" for the years 1991-97. Under 26 U.S.C. § 6702, a $500 civil penalty may be assessed against a taxpayer when: 1) the taxpayer files "what purports to be a return" that 2) either fails to contain information which is sufficient to ascertain whether the self-assessment is correct or contains information which on its face indicates that the self-assessment is substantially incorrect; and 3) the taxpayer's position is frivolous or demonstrates a

desire to delay or impede the administration of the income tax laws. <u>Sullivan v. United States</u>, 788 F.2d 813, 814-15 (1st Cir. 1986) (citing 26 U.S.C. § 6702). Mr. Melone conceded that he filed "zero returns", falsely asserting he made no income during 1991-97, in order to make a "rebellious statement" to the IRS that taxes were "voluntary". The Court finds that these were frivolous filings that merit civil penalties under § 6702. Accordingly, the Court finds that Mr. Melone is liable for $7,450.02 in civil penalty assessments for tax years 1991-97.

**II.   Enforcement of Tax Liens Against Pleasant Street Property**

Mr. Melone's tax liabilities for the years 1991-96 were assessed on November 9, 1998 when Mr. Melone retained title to the Pleasant Street Property.[1] Under 26 U.S.C. §§ 6321 and 6322, if any person liable to pay any tax neglects or refuses to pay the amount due, the amount "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person" and "such lien shall arise at the time the assessment is made and shall continue until the liability . . . is satisfied." 26 U.S.C. §§ 6321 and 6322. Accordingly, the Court finds that this portion of Mr. Melone's

---

[1] The United States notes that the balance due on the federal income tax liabilities for the years 1991-96 was $132,673.91, a majority of Mr. Melone's tax liabilities. Pl.'s Reply 3 n.2. This leaves only $39,072.71 to be attached under the "nominee theory" (see below).

tax liability attached to the Pleasant Street Property upon the 1998 assessment.

Plaintiff argues that the remaining portion of Mr. Melone's liability, which includes the 1997-99 income tax liabilities and the civil penalties for filing frivolous returns for 1991-97, attaches to the Pleasant Street Property under a "nominee" theory of liability. Under this theory, the IRS may collect a taxpayer's unpaid tax liabilities from a person or entity that holds bare legal title to property for the benefit of another (i.e., the taxpayer's "nominee").[2] Wellington Condo. Trust v. Pino, 686 F. Supp. 2d 117, 121 (D. Mass. 2010) (internal citations omitted) ("[V]esting formal title to a taxpayer's property in the taxpayer's . . . nominee will not place the property outside the reach of a [federal tax] lien."). In order to determine whether the owner of a property is a nominee, courts consider whether:

---

[2] Notably, whether a particular asset belongs to a taxpayer is a question of state law. Recently, the First Circuit stated that courts must "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." Berkshire Bank v. Town of Ludlow, Mass., 708 F.3d 249 (1st Cir. 2013) (quoting Drye v. United States, 528 U.S. 49, 58 (1999)). The Court then went on to assume, without deciding, that the doctrine applied, since neither party had argued otherwise. Id. Similarly, neither the United States nor Melone has identified the controlling state law in this case. Instead, both parties assume that the nominee doctrine factors govern the Court's analysis. Therefore, the Court applies the nominee factors as stated in the parties' briefs. See also United States v. Kattar, 81 F. Supp. 2d 262, 273-74 (D.N.H. 1999) (applying the nominee theory when neither party identified controlling state law, but both parties agreed on "nominee" factors).

9

(1) the taxpayer expended personal funds for the property; (2) inadequate or no consideration was paid by the nominee; (3) the property was placed in the nominee's name in anticipation of a lawsuit or other liability; (4) the taxpayer enjoys the benefits of, retains possession of, and exercises dominion and control over the property; (5) a close family relationship exists between taxpayer and nominee; (6) conveyances between taxpayer and nominee were recorded; and (7) the nominee interferes with the taxpayer's use of the property. Pino, 686 F. Supp. 2d at 122. In its analysis, the Court focuses on the totality of the circumstances without regarding any single factor as determinative. Dalton v. C.I.R., 682 F.3d 149, 158 (1st Cir. 2012). The ultimate inquiry is "whether the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining the benefits of true ownership." Berkshire Bank v. Town of Ludlow, Mass.,708 F.3d 249, 12-1625, 2013 WL 135728 at *4 (1st Cir. 2013) (internal quotations omitted).

On a motion for summary judgment, a court may establish as a matter of law that a person or entity was a taxpayer's nominee. See Berkshire Bank v. Town of Ludlow, 10-CV-30198-MAP, 2012 WL 1085568 at *3 (D. Mass. Mar. 29, 2012) aff'd sub nom. Berkshire Bank v. Town of Ludlow, Mass., 708 F.3d 249 (1st Cir. 2013). Where a party suggests that a factual dispute exists regarding

the relationship between the taxpayer and the alleged "nominee", the party must be able to identify any determinative issue of disputed fact that would require resolution by a factfinder. Id.

In evaluating the aforementioned factors, the Court finds that the Trust, created with the primary purpose of insulating Mr. Melone's property from liability, is legally Mr. Melone's nominee. First, Mr. Melone bought the property from his parents for $150,000 in 1994, thereby expending his own personal funds for the property. Second, he transferred title of the property to the Trust for no consideration. Third, Mr. Melone admitted that he placed the property in the trust because of "a concern of being sued from various potential liabilities." Defs' Opp'n 5. While Defendant asserts that his concern was not only about being sued by the IRS, this argument misses the point as the third factor is not limited to concern about tax liabilities.

Further, there is ample support in the record that suggests Mr. Melone has enjoyed the benefits of, retained possession of, and exercised dominion and control over the property since the creation of the Trust, meeting the fourth and seventh factors. Mr. Melone had taken out a mortgage on the property before the trust was created and has always remained the sole borrower on the loan. Although Mr. Melone initially paid "rent" to the Trust (which roughly equaled the mortgage payments paid by the Trust to the mortgagee), in 2005 he began making the mortgage payments

directly. On his personal federal income tax returns, Mr. Melone has claimed deductions for property taxes, mortgage interest paid and for business use of the property. Mr. Melone also kept the utility bills and property insurance in his own name and paid them from his own income. Further, there is no evidence that the Trust has interfered with Mr. Melone's use of the property, besides complicating his efforts to obtain refinancing on the mortgage, which is a minor incursion at most. Finally, at all times since 1999, Mr. Melone has continued to live on the property and to hold himself out to others as its owner.

The fifth factor also weighs in favor of finding that the Trust was Mr. Melone's nominee. The relationship between the taxpayer and the Trust are inextricably linked: Mr. Melone himself is the sole grantor/settler of the trust and the lone trustee, his wife and sister are the potential successor trustees and his children are the sole beneficiaries.

The sixth factor is the only one that weighs against making a nominee determination since Mr. Melone duly recorded the deed transferring title of the property to the Trust. However, this formality alone is not enough to tilt the scale in favor of finding the Trust was an independent entity. See Berkshire Bank, 2012 WL 1085568 at *2 (finding that limited liability company was a taxpayer's nominee despite the fact that the company "observed the minimal corporate formalities required of [LLCs] under

Massachusetts state law" since the taxpayer continued to develop the property exactly as he had before creating the LLC and personally guaranteed the mortgage the company gave to the bank). In this case, although Mr. Melone duly recorded the deed, he remained the only borrower on the loan and was solely responsible for its payment. Further, although Mr. Melone originally created a leasehold estate with the Trust, he abandoned these formalities in 2005 and assumed the mortgage payments directly.

The totality of the circumstances in the record indicates that the Trust was nothing more than a legal fiction created by Mr. Melone to evade tax, and other, liabilities. Defendants have raised no genuine issues that require resolution by a factfinder, citing only a vague "dispute over the character of the Trust." Therefore, the Court finds as a matter of law that the Trust was Mr. Melone's nominee and finds that the 1997-99 income tax liabilities and the civil penalties for filing frivolous returns for 1991-97 attach to the Pleasant Street Property.

## ORDER

The Court **ALLOWS** the Plaintiff's Motion for Summary Judgment (Docket No. 28).

                                        /s/ PATTI B. SARIS
                                        Patti B. Saris
                                        United States District Judge